And at this time, we'll hear Fernandez-Bravo v. Town of Manchester. Good morning, your honors. Good morning. In support, Igor Cooperman for the Plaintiff Appellant, Mr. Pedro Christian Fernandez-Bravo. Your honors, this case arises out of a grant of summary judgment for the defendants in a federal 42 UAC 1983 tort claim and pendant state tort claims. At this point, on appeal, the issues are about Fourth Amendment, malicious prosecution, due process, First Amendment retaliation, and the Connecticut State Tort of Abusive Process, your honors. I also noticed my brother counsels in here, I understand he had a surgery that he is recovering from and he could not make it, unfortunately. Your honors, jump straight to what is this case really about? It's about two parts of an investigation, the arrest and what led to it, and what happened after the arrest of my client. The arrest began by an investigation made by a complaint by his ex-wife. There's, again, the record viewed in light most favorable to my client, the plaintiff, shows that in the beginning, the complaining witness, Ms. Rojas, showed up with a bunch of emails saying he's sent me these, but at the same time, she submitted emails from herself to the investigating officer, Officer Garay, where she's extorting money from my client and saying, if you don't give me money, I will go to the police and accuse you of threatening and harassing me. Right, but then, even with that, because the standard is that we supply the allegedly omitted information, his own responses back are enough to establish probable cause. Your honor, I would say, again, I would rely on the arguments in the brief with respect to that, but I think the more salient point here is this, when we're dealing with probable cause in a malicious prosecution case, we have to look at each count alleged individually, there's probable cause to support each. Let me ask you, with respect to that, do you need a distinct injury from that caused by the arrest to make that argument? And if so, what's the distinct injury here from the prosecution that's distinct from the arrest? Your honor, it is my understanding that the case law on this is the injury is for each count carries its own injury because the prosecution that goes forward entails different bond, different approach in court, more time in court, additional attorney's fees. Get it in this case? Because it seems to me you don't have that claim in this case. I well understand that if you could show that, you would be able to argue that, well, probable cause for one violation doesn't necessarily absolve them from needing probable cause for another, but I don't see how the prosecution was expanded, or bail increased, or any other of the things that usually allow a malicious prosecution claim to be distinct from a false arrest claim. Well, your honors, again, this is not the grounds on which the district court decided. Again, district court decided there was probable cause, absolutely. There was, therefore, qualified immunity applies. It did not address each count. And again, we're talking about attorney's fees here. Count, he had to retain counsel. His counsel- He would have had to retain counsel on violating the order in any event. But his fees would have been different. I'm sorry? His fees would have been different. And what's the evidence of that? Again, your honor, this was not part of the defendant's summary judgment argument in the district court, but there is evidence in the record. But you would have needed to develop that to argue. I mean, your client got arrested for violating the order and for stalking. Correct. Now, I'm suggesting to you that there is probable cause for violating the order even when you supplement the information that was provided. There may be a question about the stalking, but if there is, how does that added charge, how did that affect your client adversely in any way? Well, your honor, I think officer, I'm sorry, Sergeant Mastin's testimony that's in the record that, again, this is his version of how he set the bond after somebody else sent the bond before him. We reviewed the case based on all the allegations in that, on the seriousness of it, and that's how we determined the bond. So when, again- They were both knollied at the same time though, right? The stalking and the violation- They were all knollied at the same time, that is correct. But he had made the lesser bond, and where's the evidence of that? Your honor, there was no evidence of that. It still has to be paid. No, no, because this is summary judgment, and so the injury is that he was detained. And if your client could not have made the original bond, and he hasn't put in any evidence that he could have, then he's got no injury from the fact that it got raised higher. It's not merely the raising of the bond, it is also the fact that he had to retain counsel. And it is fundamental that counsel charge based on the allegations. If it's one count of violation of a protective order, the fee wouldn't be the same as stalking. Four counts of violation of a protective order. And there are two parts of this. There's one count of violating a protective order that's premised on a phone call that never took place. The officer, in her warrant- I don't want to say that, but the victim claimed that it did, and the officer, for probable cause purposes, was entitled to believe the victim. Your honor, Ms. Rojas' testimony at her deposition was that I never called Mr. Fernandez. I'm sorry, Mr. Fernandez never called me. My ex-husband, Lester Tone, called me, and then I called Mr. Fernandez. You're talking about what the officer knew at the time of the arrest. Correct, your honor. And again, Ms. Rojas' testimony at the deposition was this is exactly the same thing she told to Officer Garay, that she called my client, and then he told her that he took their son to Manchester Hospital. Officer Garay also put in her affidavit that Mr. Fernandez admitted to making the phone call. And his testimony, I never said that. I said she called me, I called her family in Michigan, I let her know that our son is sick. So that was a violation of a protective order count premised specifically on a phone call that never took place. My client never reached out and called anyone. Am I right that Garay met with Fernandez Bravo twice before submitting the application for the arrest warrant? No, she only met with him once. It was, she showed up at his house, she asked him about the emails. Showed him the emails, right? Well, there's different testimony she says she showed. My client's testimony was she kind of waved it in front of his face, said what are these emails about? But ultimately, at that visit, my client said, hey, she's threatening me, she's harassing me. I'm just responding back, hey, if you don't stop, I have an immigration complaint against you, and I'm going to file it. By the way, here's an immigration complaint, look. Puts it down on the table, says, by the way, I can show you all the emails. Let's go, I don't have internet connection at my house. Let's go downstairs to, I guess it's one of those condos where they have- That I provided Pedro with a copy of the emails. That's her allegation in the report, and those are her allegations in the affidavit. I think- Is that not true? Did you demonstrate that's not true? No, Your Honor, but I don't think that's a material fact in this case, whether or not she provided him with the emails. He never denied making those emails. He never said, she showed me the emails, but she didn't, and that's what matters in this case. That's besides the point. They both knew which emails they were talking about. The nature is what was represented in the affidavit. My client explained what the emails were about, offered to show more emails, showed her the immigration complaint he was referring to. None of that is in the affidavit. In fact, the affidavit states, Mr. Fernandez couldn't explain what the emails were about. Well, how would he explain the phrase, don't make me your executioner? Your Honor. What's the explanation for that? Yeah. I would say this. I understand how the emails are rather damning evidence in this case. There was an alternate translation between executioner and punisher. And what- That's a punisher. There was another, during one of the depositions, the interpreter translated them as punisher. So, ultimately, this isn't about semantics. Why is the husband punishing his wife? And what does he have in mind? And why shouldn't she be concerned about it? And isn't that a form of harassment? Well, Your Honor, in context, if somebody sends you an email that says, by the way, you better pay for my phone or else I'm calling the police. When I say $500, I'm paraphrasing. Or if I say, give me money on Thursday, I mean Thursday, not Friday, or else I'm going to report you. That's not what we're talking about. We're talking about someone who is the subject of a protective order, telling the beneficiary of that protective order, don't make me your executioner. I mean, probable cause is not a preponderance standard. To suggest that he is not in violation of that order by having these kind of conversations with his wife, just strikes me as very difficult to maintain. Your Honor, I do understand the gravity of sort of an objective reading of these emails. Therefore, I think the more salient issue here is the stalking charge and this made up story about laptop tracking through a cell phone of a cousin, which doesn't pan out when somebody actually reads Officer Garai's own report. Which is later, which according to her, she took her report, put it into the affidavit in application for a warrant, and then took some things out. So what did she take out? There is this alleged other phone call by my client in the report, not in the affidavit, on 7-1209, where he again allegedly called Ms. Rojas and said, you get out of my country, you have 72 hours to get out of my country. Now, if that's not a threat or a violation- So she made up the GPS tracking information? Yes, Your Honor, because if you- She made it up, the officer made it up. He didn't open up his laptop and show them the red marker. My client unequivocally testified that that did not take place. He had no internet connection at the house. He could not have done that. But even if you take that out, was there still probable cause to arrest for the breach of the order? There was, I do not want to concede that there was probable cause, but I think overall, the more salient and better argument is lack of probable cause in a context of a malicious prosecution under two counts. One, of violating a protective order by making a phone call that never took place, that Rojas never said took place. Now, I know the defendants also rely on this written statement that Ms. Rojas gave to the officer Garay. However, at her deposition, again, viewing the record in light most favorable to the plaintiff, at one point Ms. Rojas looks at the document, reads and says, that's not my statement. That's my signature, but that's not my statement. So again, we are not, ultimately, if this were before a jury, after defendants counsel adequately cross-examines her, the jury might say, okay, well, how could it possibly not be her statement? I understand the practicalities. Her signature is on it, but she says it's not hers. But right now, at summary judgment, where this is really a question of credibility or reliability. Okay, thank you. We will reserve decision.